Jackie LAUTURE, Plaintiff–Appellant,

v.

INTERNATIONAL BUSINESS
MACHINES CORPORATION,
Defendant–Appellee.

Docket No. 99–7732

United States Court of Appeals,
Second Circuit.

Argued: Jan. 3, 2000
Decided: June 20, 2000

Stephen Bergstein, Goshen, N.Y. (Law Offices of Michael H. Sussman, Esq.), for Plaintiff–Appellant Jackie Lauture.

John Houston Pope, New York, N.Y. (Davis Weber & Edwards, P.C., Jay E. Gerber, of Counsel), for Defendant–Appel-

lee International Business Machines Corporation.

Before: FEINBERG, KEARSE, and SACK, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff-appellant Jackie Lauture appeals from a judgment entered in the United States District Court for the Southern District of New York (Charles L. Brieant, J.), for defendant-appellee IBM. The appeal raises the question whether an at-will employee can sue for racially discriminatory discharge under 42 U.S.C. § 1981, an issue of first impression in this court. For the reasons stated below, we reverse the judgment of the district court and hold that an at-will employee may sue for such a discharge under 42 U.S.C. § 1981.

## I. Background

Lauture worked for IBM for 16 years, from 1982 to 1998. During her first seven years at IBM, Lauture worked in a number of accounting or finance-related staff positions. She moved into IBM's Human Resources Department in 1989, and was promoted to the position of Director of Human Resources for IBM's division of Global Procurement in 1996. Throughout her employment at IBM, Lauture was an at-will employee. IBM's employment policy was, and is, that all employment is at will unless the employee has a written contract approved by the Senior Vice President of the Human Resources Department. Lauture admits that she was an at-will employee.

IBM terminated Lauture's employment on June 30, 1998. Lauture filed this action less than two weeks later, on July 10, 1998, alleging that IBM unlawfully discriminated against her on the basis of race in terminating her employment. Lauture is of African descent. Lauture did not seek relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., but instead asserted a claim under § 1981, as well as under the New York Human Rights Law, N.Y. Exec. Law § 296. In her complaint, Lauture alleges that IBM treated her and other African–American employees differently from similarly situated white employees. IBM contends that it terminated Lauture solely because her job performance in her last three years of employment was unsatisfactory.

In May 1999, the district court granted IBM's motion for summary judgment, concluding that "an at will employee cannot sue for wrongful discharge under § 1981(a), as amended in 1991." The district court also declined to exercise supplemental jurisdiction over Lauture's state law claim. This appeal followed.

## II. Discussion

The district courts in this circuit have divided over whether an at-will employee can maintain a cause of action under § 1981 for racially discriminatory termination. In its brief, two-page decision, the district court concluded that Lauture could not. The district court noted that there were some cases to the contrary, but explained that those cases "appear to represent a minority view." It is true that some district courts in this circuit have concluded that an at-will employee may not sue for unlawful termination under § 1981. See, e.g., *Bascomb v. Smith Barney Inc.*, 96 Civ. 8747(LAP), 1999 WL 20853, at *4 (S.D.N.Y. Jan. 15, 1999); *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665, 675–76 (E.D.N.Y.1997), aff'd, 162 F.3d 1148, 1998 WL 640438 (2d Cir.1998) (unpublished).[1]

█ Yet, in the past two years alone, three courts of appeals addressing this

---

**1.** Other cases rejecting claims of unlawful termination under § 1981 include *Mungin v. Macklowe*, 97 Civ. 6058(LMM), 2000 WL 325694, at *2 (S.D.N.Y. Mar. 28, 2000); *Simpson v. Vacco*, 96 Civ. 3916(JFK), 1998 WL 118155, at *8 (S.D.N.Y. Mar. 17, 1998); *Moscowitz v. Brown*, 850 F.Supp. 1185, 1192 (S.D.N.Y.1994); and *Askew v. May Merchandising Corp.*, 87 Civ. 7835(JFK), 1991 WL 24390, at *5–6 (S.D.N.Y. Feb. 20, 1991).

issue—the Fourth, Fifth, and Tenth Circuits — have concluded that an at-will employee may sue for wrongful discharge under § 1981. See *Perry v. Woodward,* 199 F.3d 1126, 1133 (10th Cir.1999), cert. denied, —— U.S. ——, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000); *Spriggs v. Diamond Auto Glass,* 165 F.3d 1015, 1018–19 (4th Cir.1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.,* 160 F.3d 1048, 1051–52 (5th Cir.1998) (reh. and suggestion for reh. en banc denied, Dec. 7, 1998). Further, a growing number of district courts in this circuit have also adopted this view. See *Hartzog v. Reebok Int'l Ltd.,* 77 F.Supp.2d 478, 479–80 (S.D.N.Y.1999); *Dew v. Health Ins. Plan of Greater New York,* 97 Civ. 7006(ILG), 1999 WL 684158, at *4 (E.D.N.Y. July 15, 1999), aff'd, 208 F.3d 202, 2000 WL 282488 (2d Cir.2000) (unpublished); *Harris v. New York Times,* 90 Civ. 5235(CSH), 1993 WL 42773, at *4 (S.D.N.Y. Feb. 11, 1993).[2] We join the emerging consensus of the district courts in this circuit, and the other circuit courts of appeal that have squarely decided this issue,[3] to hold that an at-will employee may sue under § 1981 for racially discriminatory termination.

A. The scope of § 1981

Section 1981 was originally the first section of the Civil Rights Act of 1866. It provided as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*Runyon v. McCrary,* 427 U.S. 160, 164 n. 1, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (setting forth statute); see also *id.* at 168–70 & n. 8, 96 S.Ct. 2586 (describing derivation of statute). In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), although the Supreme Court recognized that § 1981 " 'prohibits racial discrimination in the making and enforcement of private contracts,' " *id.* at 171, 109 S.Ct. 2363 (quoting *Runyon,* 427 U.S. at 168, 96 S.Ct. 2586), it rejected the claim that § 1981 also applied to "conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions," *id.* at 177, 109 S.Ct. 2363.

Congress passed the Civil Rights Act of 1991 in response to *Patterson.* See H.R.Rep. No. 102–40(II), at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694–95 ("The Act overrules the Supreme Court's 1989 decision in *Patterson* .... By restoring the broad scope of Section 1981, Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race."). The 1991 Act amended § 1981 by adding two additional provisions to the statute, and by designating the preexisting provision as § 1981(a). Section 1981(b), the provision relevant to this case, states:

For purposes of this section, the term "make and enforce contracts" includes

---

**2.** Other cases allowing plaintiffs to proceed under § 1981 on unlawful termination claims, all decided after the district court in this case granted summary judgment against Lauture, include *Johnson v. City of New York,* 99 Civ. 0165(DAB), 2000 WL 377514, at *2 (S.D.N.Y. Apr. 12, 2000); *Bampoe v. Coach Stores, Inc.,* 93 F.Supp.2d 360, 364–65 (S.D.N.Y.2000); *Andrews v. Citigroup Inc.,* 99 Civ. 3221(HB), 1999 WL 1277427, at *5 (S.D.N.Y. Dec. 30, 1999); *Equal Employment Opportunity Comm'n v. Die Fliedermaus, LLC,* 77 F.Supp.2d 460, 470 (S.D.N.Y.1999); and *Lazaro v. Good Samaritan Hosp.,* 54 F.Supp.2d 180, 184–85 (S.D.N.Y.1999).

**3.** The issue was recently raised before the Seventh Circuit, but that court found it unnecessary to resolve the question. See *Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1034–35 (7th Cir.1998).

the making, performance, modification, and *termination* of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981(b) (emphasis added). The amended § 1981 thus covers claims of discriminatory termination.

■ To establish a § 1981 claim, a plaintiff like Lauture must show: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981. See *Brown v. City of Oneonta*, 195 F.3d 111, 121 (2d Cir.1999) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam)). Because the district court granted IBM summary judgment solely on the basis of its view that at-will employees are not able to sue for wrongful termination under § 1981, the court expressed no view as to whether Lauture demonstrated any intent to discriminate. Nor do we. Instead, we turn to the question whether § 1981, as amended, provides a cause of action for racially discriminatory termination from at-will employment.

**B. Application of § 1981 to at-will employment**

 1. The meaning of "contract" under § 1981

■ In drafting § 1981, Congress did not seek to promulgate some specialized federal definition of contract law, but merely intended the term "contract" to have its ordinary meaning. See *Spriggs*, 165 F.3d at 1018; see also *Resolution Trust Corp. v. Diamond*, 45 F.3d 665, 672 (2d Cir.1995) ("It is a settled principle of statutory construction that, absent contrary indications, Congress intends to

adopt the common law definition of statutory terms.") (quoting *United States v. Shabani*, 513 U.S. 10, 13, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994) (additional citations and internal quotations omitted)). The *Restatement of Contracts* defines "contract" as "a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty." Restatement (Second) of Contracts § 1 (1979). In this context, Lauture's promise to perform work for IBM, as consideration for IBM's promise to pay her, was a contract. See *Spriggs*, 165 F.3d at 1018–19; see also *Perry*, 199 F.3d at 1133 (making similar point under law of New Mexico).[4] As District Judge Kaplan explained in *Hartzog*, in allowing a plaintiff to proceed under § 1981: "the employee covenants to perform services for the employer and the employer covenants to compensate the employee, in each case unless and until one of them terminates the agreement." *Hartzog*, 77 F.Supp.2d at 480. We agree with this definition. Thus the relationship between Lauture and IBM was a contractual relationship within the meaning of § 1981.

IBM argues that a variety of courts have required plaintiffs bringing § 1981 claims to demonstrate that the alleged contract conformed to state law, as opposed to the ordinary common-law definition. Yet in each of these cases, there was no contractual relationship at all between the parties, under any understanding of the term. In *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir.1996), for example, the court upheld the dismissal of a § 1981 claim because plaintiffs, potential customers, "never sought to enter into a contractual relationship." *Id.* at 414. *Fair Employment Council v. BMC Marketing Corp.*, 28 F.3d 1268 (D.C.Cir.1994), rejected a § 1981 claim because plaintiffs pre-

---

4. IBM relies on a Ninth Circuit case, *Judie v. Hamilton*, 872 F.2d 919 (9th Cir.1989), in which the court rejected a § 1981 claim by a public employee, based on alleged discrimination in denying the employee supervisory responsibility, contrary to his job description. *Judie* is distinguishable; first, it preceded the 1991 amendments to § 1981; and second, it defined the plaintiff's contract under Washington state law.

sented an employment agency with false information, thus creating voidable contracts. *Phelps v. Wichita Eagle–Beacon,* 886 F.2d 1262 (10th Cir.1989), involved an attorney who argued that a newspaper's critical coverage of him interfered with "prospective business opportunities." *Id.* at 1267. The court found that any alleged defamation did not deny the attorney's right to contract with others. See *id. Cook v. Advertiser Co.,* 458 F.2d 1119 (5th Cir.1972), involved the refusal to print a bridal announcement without charge. Obviously, there is no refusal to make a contract where one party offers the other no consideration. There is a vast difference, however, between these cases, where there was minimal interaction between the parties, and this one, where one party worked for the other, and was paid for her work, for 16 years. Because the relationship between Lauture and IBM was a contract in the ordinary meaning of the word, Lauture may bring a § 1981 claim.[5]

2. The significance of Lauture's "at-will" status

 The relationship between Lauture and IBM is no less contractual because it was at will. It is well established, as IBM stresses, that New York is an at-will employment state. " '[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.' " *Rooney v. Tyson,* 91 N.Y.2d 685, 689, 674 N.Y.S.2d 616, 697 N.E.2d 571 (1998) (citations omitted), answering question certified by this Court, 127 F.3d 295 (2d Cir.1997). It is similarly clear that Lauture was an at-will employee. Yet this does not mean that there was no contract at all for purposes of § 1981. See *Spriggs,* 165 F.3d at 1018 ("[T]he lack of an agreed-upon duration does not invali-

date the underlying contract itself.") (citing Restatement (Second) of Contracts § 33 cmt. d, illus. 6 (1981)). We have previously held, in a decision that IBM does not address, that the Medical Director of a county hospital, an at-will employee, may have a cause of action under New York law for tortious interference with her contractual relationship with the hospital. See *Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir.1996); cf. *Haddle v. Garrison,* 525 U.S. 121, 126, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) (concluding that an at-will employee may sue under § 1985(2) for tortious interference with employment relationships). If there is no contract at all in an at-will employment relationship, it is hard to see how such a cause of action would be tenable.

. In the context of a racial discrimination claim brought under federal law, the fact that employment was at will is simply not dispositive. The New York Court of Appeals has noted that the doctrine is not a bar to actions by employees under certain circumstances: *"[A]bsent a constitutionally impermissible purpose,* a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) (emphasis added); see also *Jones v. Dunkirk Radiator Corp.,* 21 F.3d 18, 21–22 (2d Cir.1994) (quoting *Murphy* ); *Gorrill v. Icelandair/Flugleidir,* 761 F.2d 847, 851 (2d Cir.1985) (same); *Cavanaugh v. Doherty,* 243 A.D.2d 92, 675 N.Y.S.2d 143, 148 (3d Dep't 1998) (same). Section 1981 is a statutory proscription against racial discrimination—a constitutionally impermissible purpose—in the making, performance, modification, and termination of contracts, and thus falls

5. IBM also relies heavily on *Murray v. National Broadcasting Co.,* 844 F.2d 988 (2d Cir. 1988), in which plaintiff brought a § 1981 claim alleging that NBC and the popular comedian Bill Cosby had stolen his idea for a wholesome situation comedy featuring a nonstereotypical African–American family, an idea Cosby had conceived of as early as 1965. This court concluded that plaintiff's § 1981 claim failed because there was no novelty to the idea; the decision was not based on a ground relevant to this case.

within the limitations to the at-will doctrine set forth in *Murphy*. Thus "even though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause." *Fadeyi*, 160 F.3d at 1051–52; see also *Spriggs*, 165 F.3d at 1020 (quoting *Fadeyi*). Each of the circuit court decisions allowing plaintiffs to pursue a claim under § 1981 did so even though under the state law at issue, the plaintiff's employment was at will. See *Perry*, 199 F.3d at 1132 (New Mexico); *Spriggs*, 165 F.3d at 1018 (Maryland); *Fadeyi*, 160 F.3d at 1049–50 (Texas). We do not see how the law of the state of New York requires a different result.[6]

Finally, the Supreme Court in *Patterson* nowhere suggested that a contract for a fixed term is necessary to support a § 1981 claim. Justice Stevens, concurring in the judgment in part and dissenting in part, noted that Patterson was an at-will employee. See *Patterson*, 491 U.S. at 221, 109 S.Ct. 2363 (Stevens, J., concurring in part and dissenting in part). Although the Court ruled that Patterson could not sue under § 1981 for racial harassment, the Court concluded that Patterson could sue under § 1981 for the employer's failure to promote her, if that failure could be characterized as "the employer's refusal to enter into the new contract." *Id.* at 185, 109 S.Ct. 2363. As the Fifth Circuit has noted, "[o]bviously, there can be no 'new contract' unless there is first an old *contract.*" *Fadeyi*, 160 F.3d at 1050; see also *Harris*, 1993 WL 42773, at *4 ("[T]he Court regarded Patterson's relationship with her employer—the rendition of services in exchange for the payment of wages—as sufficiently contractual in nature to satisfy § 1981."). As in *Patterson*, the absence of an employment contract for a fixed term should not bar Lauture from pursuing a § 1981 claim.

### 3. Section 1981 in the employment context

IBM's proposed interpretation of § 1981 to exclude at-will employment relationships would severely weaken the statute. More than 40 states recognize at-will employment. See *Fadeyi*, 160 F.3d at 1049. To prevent at-will employees from suing under § 1981 would deny protection from workplace discrimination to a significant number of people:

> None can contest that discriminating against an employee on the basis of race is illegal and against public policy. In amending § 1981, Congress was advancing such public policy concerns by providing a vehicle for every employee to remedy racial discrimination in the workplace. Congress could not have meant to exclude at-will workers from the reach of § 1981, as to do so would be to allow use of the ubiquitous at-will doctrine as leverage to incite violations of our state and federal laws.

*Id.* at 1052 (internal quotations omitted). Congress believed that § 1981 was of "particular importance" because it "is the only federal law banning race discrimination in *all* contracts." H.R.Rep. No. 102–40(II), at 35 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 729 (emphasis added). Congress explained that part of its aim in revising § 1981 was to "restore protection under federal law against harassment and other forms of intentional discrimination in the terms and conditions of employment for the more than 11 million employees in firms that are not covered by Title VII." H.R.Rep. No. 102–40(I), at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630. IBM's narrow construction of § 1981 is thus at odds with the purpose of the statute.

---

**6.** IBM cites "a raft of New York cases that hold that a breach of contract claim may not [be] based on an at-will relationship." Most of the cases cited involve only breach of contract or wrongful termination claims, not dis-

crimination. The relevant question is not whether an at-will employee may be terminated at any time, but whether an at-will employee has any contractual rights at all. We believe the employee does.

IBM also argues that Title VII is an employment discrimination statute, while § 1981 should be limited to contracts, apparently suggesting that the two cannot serve similar purposes. We disagree. First, we have already explained how applying § 1981 to the employment context does not, as IBM states, " 'bend' the contract requirement." When it amended § 1981 in 1991, Congress was reacting to the *Patterson* decision and thus had the employment context in mind. Second, Congress also intended § 1981 to apply to employment discrimination. In 1972, the Senate rebuffed an amendment to the Equal Employment Opportunity Act (EEOA) that would have limited remedies for workplace discrimination to Title VII and the Equal Pay Act, 29 U.S.C. § 201 et seq. See *Runyon*, 427 U.S. at 174 n. 11, 96 S.Ct. 2586 (discussing Senate debate). As the sponsor of the EEOA explained, " 'the courts have specifically held that [T]itle VII and the Civil Rights Acts of 1866 and 1871 are not mutually exclusive, and must be read together to provide alternative means to redress individual grievances.' " *Id.*[7] Furthermore, § 1981 is commonly invoked against employers who hire fewer than 15 employees, as Title VII does not cover that class of employers. See 42 U.S.C. § 2000e(b). Were this court to exclude at-will employees from the scope of § 1981, at-will employees at small businesses would be left with no remedy for workplace discrimination. See *Fadeyi*, 160 F.3d at 1049–50. These considerations further support our refusal to limit § 1981 as IBM suggests.

### Conclusion

We have considered all of IBM's arguments for affirmance and find them to be without merit. For the reasons stated above, we reverse the judgment of the district court. We remand this case for further proceedings consistent with this opinion.

7. Similarly, the 1991 House Report recommending the amendment of § 1981 explained that:

> Under current law, persons who bring race discrimination claims before the EEOC may have claims under both Section 1981 and Title VII. There is no evidence that the availability of damages under Section 1981 has interfered with conciliation of race discrimination claims by the EEOC. Most Title VII litigation is brought under both provisions. . . .

H.R.Rep. No. 102–40(II), at 28 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 722.