June **JOSEPH, Plaintiff,**

v.

**WENTWORTH INSTITUTE OF TECHNOLOGY, Defendant.**

**No. CIV. A. 99–10989–MEL.**

United States District Court, D. Massachusetts.

Oct. 23, 2000.

136

Winston Kendall, Boston, MA, for Plaintiff.

Paul G. Lannon, Jr., James D. Smeallie, Sheburne, Powers & Needmas, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

LASKER, District Judge.

Joseph's ten count complaint alleges that she was discriminated against on the basis of her race, gender, color, national origin, and age during her longtime employment at Wentworth. She alleges that Wentworth's actions violated her rights under various federal laws; Title VI, Title VII, Title IX, 42 U.S.C. § 1981, 42 U.S.C. § 2000e–3(a), the Civil Rights Act of 1991 [1] and "breached [Wentworth's] contract with the United States." In addition, Joseph asserts that Wentworth's conduct violated Massachusetts' anti-discrimination law, M.G.L. ch. 151B and constituted a breach of contract. To prove these numerous alleged violations of state and federal law, Joseph has filed a far reaching motion to compel discovery. In opposition to Joseph's motion and in support of its own motion for summary judgment, Wentworth maintains that all of Joseph's claims are legally insufficient and that further discovery would be futile. Not surprisingly, Joseph has responded to Wentworth's summary judgment motion by moving under Fed.R.Civ.P. 56(f) to delay disposition of the summary judgment motion until its

1. Civil Rights Act of 1991, Pub.L.No. 102–166, 105 Stat. 1071 (codified in scattered sections of 2 U.S.C.).

motion to compel has been decided. In addition, both parties have filed a motion to strike. Wentworth's summary judgment motion is granted in part and deferred in part. Joseph's Rule 56(f) motion and motion to compel are granted in part and denied in part. Joseph's motion to strike is denied. Decision on Wentworth's motion to strike is contained in a separate Order.

## I.

Joseph is an African–American female of West Indian ancestry who was an at-will employee at Wentworth from 1979 until March 27, 1998. From 1979 until 1992, Joseph worked as an executive secretary in Wentworth Labs research department. According to all accounts, this period of Joseph's employment at Wentworth was relatively tranquil. Joseph received positive performance evaluations and does not allege that she was discriminated against during her time in the Wentworth Labs research department.

This period of tranquility came to an abrupt end when Joseph's position at Wentworth Labs was eliminated. On February 24, 1992, Wentworth transferred Joseph to a position as the Executive Secretary to the Vice President of Student Affairs. Joseph held this position until November 23, 1992, when she accepted a position as an administrative assistant in the Student Affairs Office. In June of 1993, Joseph was made an administrative assistant in the Student Activities Office, a job she held until her resignation.

Between 1992 and 1996, Joseph alleges that she applied for four other positions at Wentworth:[2] in 1992, the position of Program Coordinator; in 1993, the position of Assistant Director–Student Activities; in 1994, the position of Secretary to the Provost; and in 1996, the position of Assistant Director–Student Activities. Joseph contends that Wentworth's failure to hire her

for any of these positions was caused by discriminatory animus.

While Joseph's disappointment at not being hired for any of these positions appears to be the central factor which led her to believe that she was being discriminated against, she also questions certain other actions taken by Wentworth. In 1995, Joseph received negative feedback on her performance evaluation from her supervisor. Specifically, her supervisor questioned Joseph's demeanor and her organizational skills. In addition to these issues, it appears that Joseph and her supervisor disagreed as to whether Joseph was entitled to overtime for certain work she was doing and her use of sick time.

Apparently, Joseph felt strongly that all of these criticisms were unwarranted. She filed a four-page written objection to the performance evaluation stating that her supervisor "nit-picked" her and was unreasonably hostile towards her. In December of 1995, Joseph filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). Her MCAD charge alleged that Wentworth discriminated against her on the basis of her race, color, sex, age, nation origin when it failed to promote her and gave her an unfavorable review. In filing her charge, Joseph was represented by the lawyer who represents her in the instant action. Both the MCAD and the Equal Employment Opportunity Commission ("EEOC") dismissed Joseph's claims for lack of evidence. Joseph did not appeal either ruling.

Joseph alleges that her workplace environment grew even more contentious after she filed her MCAD charge of discrimination. She claims that in December of 1995, her boss, without cause, accused her of stealing a cash box and generally harassed her. In March of 1996, Joseph complained about this harassment to Wentworth's affirmative action officer. In

---

**2.** Wentworth denies that Joseph ever applied for some of these positions. For the purpose

of this motion, it will be assumed that Joseph applied for these positions.

July of 1996, Joseph applied for, and was denied, the Assistant Director position.

After Wentworth refused to hire Joseph for the Assistant Director position, her workplace environment grew more stable. Joseph does not allege that any specific action taken by Wentworth was discriminatory between July of 1996 and February of 1998. In March of 1998, at the age of 45, Joseph resigned to take a position outside Wentworth. Joseph's letter of resignation makes no mention of intolerable work conditions or discrimination. After Joseph resigned, but before she had left work, her department was audited. Joseph claims that this audit was discriminatory. In addition, Joseph maintains that her work conditions at the time of her resignation constituted a constructive discharge. On August 5, 1998 Joseph filed her second complaint of discrimination against Wentworth with the MCAD. In February of 1999, based on this complaint, Joseph filed a state court action. In May of 1999, that action was removed by Wentworth.

\* \* \* \* \* \*

## II.

*Joseph's Title VI Claim and Her Claim Based on Wentworth's Contract with the Government [3] are Without Merit*

The nondiscrimination provision of Title VI is § 601 which provides:

No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

§ 601 of Title VI (codified at 42 U.S.C. § 2000d).

The Supreme Court has recognized that a private person has an implied right of action for monetary damages under Title VI. *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 630 & n. 9, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). While private persons have this right, it is circumscribed by § 604 of Title VI. Section 604 provides:

Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization **except where a primary objective of the Federal financial assistance is to provide employment.**

§ 604 of Title VI (codified at 42 U.S.C. § 2000d–3) (emphasis added).

Even though the words of § 604 only expressly curtail the actions of "any department or agency," its prohibitions have been interpreted as applying to private actions. *See Consolidated*, 465 U.S. at 632–633, 104 S.Ct. 1248.

■ This limitation contained in § 604 is fatal to Joseph's Title VI claim. Joseph has not alleged, much less proven, that a primary objective of the federal financial assistance received by Wentworth is to provide employment. One district court has held that a plaintiff's failure to allege in the complaint that the primary objective of the aid received was to provide employment warranted dismissal. *Rosario–Olmedo v. Community School Bd. for Dist. 17*, 756 F.Supp. 95, 97 (E.D.N.Y.1991) (dismissal without prejudice to replead).

However, putting aside this omission, Joseph has failed to provide any evidence to support the unlikely proposition that the

---

**3.** While Joseph's claim based on Wentworth's contract with the government is styled as a separate count from her Title VI claim, she has failed to explain any basis, other than Title VI, for maintaining such an action. In a letter to counsel dated May 11, 2000, the court specifically requested that the plaintiff come to the summary judgment hearing prepared to explain the "authority [she] rel[ies] upon for the proposition that she has standing to sue to enforce the contractual rights of the United States." At no time, including at that hearing, has Joseph stated the authority other than Title VI which gives her the right to enforce the United States' contractual obligations with Wentworth.

aid which Wentworth, an educational institution, received from the federal government was designed to create jobs and not to aid education. *Murphy v. Middletown Enlarged City Sch. Dist.*, 525 F.Supp. 678, 709 (S.D.N.Y.1981) (holding that the primary objective of federal funds to school was to aid education not employment). Accordingly, Wentworth is entitled to summary judgment on counts two and ten of the complaint.

## III.

*Joseph's Title VII Claims are Barred*

A. *All of Joseph's Title VII Claims are Barred by Her Failure to Allege an Actionable Claim Within the Statutory Period*

Wentworth argues that Joseph's failure to file a timely charge of discrimination with the EEOC bars her Title VII claim. Section 706 of Title VII contains the applicable statutory period for filing a charge with the EEOC. It provides in pertinent part:

> A charge under this section ... in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within *three hundred days* after the alleged unlawful employment practice occurred.

§ 706 of Title VII (codified at 42 U.S.C. § 2000e–5(e)(1)) (emphasis added).

Although the literal language of § 706 appears to bar any employment discrimination claim which is over 300 days old at the time it is brought to the EEOC, this provision has been interpreted as allowing these claims when they are a part of a "continuing violation." *DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997). "Continuing violations may be serial or systematic." *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir.1998).

1. *Joseph has Provided No Foundation for Her Claim that Wentworth Systemically Channeled African–American Employees and that Claim is Barred by Her Failure to Present it at the Administrative Level*

■ Because a "systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint." *Provencher*, 145 F.3d at 14 (citations omitted). "This type of claim requires no identifiable act of discrimination in the limitations period and refers to general practices or policies, such as hiring, promotion, training and compensation." *Provencher*, 145 F.3d at 14 (citations omitted).

■ Although Joseph does not allege a systematic violation in so many words, her complaint contains a handful of conclusory statements alleging that Wentworth systematically discriminates against black employees by channeling them into entry level positions. "The denial of [Joseph's] promotion was consistent with defendant's racist practice of channeling of [sic] black employees." *Compl.* ¶ 37. The sole support which Joseph relies on to bolster this claim is her own conclusory affidavit.

This skeletal claim of systematic discrimination fails because "the plaintiff did not produce comparative evidence indicating that [s]he was treated differently." *Provencher*, 145 F.3d at 14 (quoting, *Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 611 (1st Cir.1994)). Joseph tries to resurrect this claim through her request for additional discovery on this issue. In essence, Joseph has requested the production of all documents and information concerning the hiring, promotion and retention of minorities at Wentworth. Joseph's request is denied. She has presented no facts or argument leading one to believe that discovery on this subject would provide evidence in support of her claim. Indeed, Joseph has identified no other African–

American employee who she claims was subject to "disparate treatment."

■ Alternatively, Joseph's disparate impact claim is barred because she failed to include it in her August 1998, administrative charge. In *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996) (citations omitted), the Circuit Court stated that, "in employment discrimination cases the scope of the civil complaint is ... limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Because Joseph's current disparate impact claim was neither included in nor reasonably expected to grow out of the administrative charge, it cannot be considered.[4]

*2. Joseph's Serial Violation Claim is Barred by Her Failure to Allege an Actionable Claim Within the Statutory Period*

■ In order for an employer's actions to be considered a *serial* "continuing violation," at least one actionable violation must occur within the limitations period. *DeNovellis*, 124 F.3d at 307. The Circuit Court elaborated on this requirement in *Provencher*:

> [a] serial violation occurs where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims ... It therefore makes most sense to view the anchor violation requirement as demanding that the plaintiff prove a timely act forming part of and exposing a pattern of actionable [discrimination]. Merely residual effects of past discriminatory conduct, however, are not themselves acts of discrimination and therefore will not satisfy the anchor violation requirement.

*Provencher*, 145 F.3d at 14 (citation omitted).

To meet this requirement Joseph relies on two "acts" by Wentworth: (1) its audit of her department after she had resigned; and (2) its actions which caused her "constructive discharge."

Neither alleged violation by Wentworth is actionable under Title VII. Because Joseph produces no direct evidence of discrimination, to survive summary judgment she must first establish a prima facie case under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Feliciano De La Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 (1st Cir.2000).

In *Feliciano De La Cruz*, 218 F.3d at 5, the First Circuit commented that in employment termination cases, the *McDonnell Douglas* framework requires a plaintiff to make a prima facie showing that:

> (1) the plaintiff is within a protected class; (2) she was qualified for, and performing her job at a level that met the employer's legitimate expectations; (3) she was nevertheless dismissed; and (4) after her departure, the employer sought someone of roughly equivalent qualifications to perform substantially the same work.

■ Joseph's separation from employment is not an "actionable violation" because she fails to show that she was discharged, constructively or otherwise. It is undisputed that in March of 1998, Joseph *resigned* to take a position outside Wentworth. A constructive discharge occurs when "working conditions are so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." *Vega v. Kodak Caribbean Ltd.*, 3 F.3d 476, 480 (1st Cir.1993). Joseph has failed to produce any evidence that in 1998 her working conditions were even unpleasant, let alone filled with "looming indignities." As a result, Joseph's constructive dis-

---

4. Joseph's Title VII claim that Wentworth discriminatorily failed to pay her overtime suf-

fers from the same defect and accordingly is dismissed.

charge claim is not actionable under Title VII.

■ Joseph also fails to state a prima facie case under the *McDonnell Douglas* burden shifting framework regarding the audit of her department, her second alleged "actionable violation." To state a prima facie case under Title VII a plaintiff must establish that she has suffered an adverse employment action.. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (holding an essential element in stating a prima facie case in a Title VII failure to hire claim is that the employee was actually rejected for the job).

Not every deed of an employer can be considered an "adverse employment action." Here, Wentworth audited the cash and receipts of Joseph's *entire department.* Joseph has presented no evidence that the audit was targeted at her in any way.[5] The audit of the cash and receipts in Joseph's department was neither adverse to Joseph, nor can it be considered an employment action. Accordingly, the audit of Joseph's department was not an actionable violation under Title VII.

Finally, even if Joseph had alleged an actionable violation within the statutory period, her serial continuing violation theory would fail because she "was ... aware that [s]he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Provencher*, 145 F.3d at 14. Joseph has consistently maintained that she knew that Wentworth was discriminating against her as early as 1992–1993 when she was denied promotions. In fact, these earlier claims

formed the basis of her 1995 discrimination claim filed with the MCAD.

Accordingly, Wentworth is entitled to summary judgment on counts one and six of the complaint.[6]

**B. Joseph's Failure to Appeal the MCAD & EEOC's Dismissal of Her December, 1995, Charge of Discrimination Bars Relitigation of These Claims under Title VII**

■ Section 706 of Title VII, codified at 42 U.S.C. § 2000e–5 (f)(1), provides in pertinent part, "[i]f a charge filed with the Commission [the EEOC] ... is dismissed ... [the Commission] shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought." Joseph *never* appealed the dismissal of her December, 1995, charge of discrimination. As a result, Wentworth is entitled to summary judgment on all the Title VII claims included in her December, 1995, charge of discrimination. *See Rice v. New England Coll.*, 676 F.2d 9, 10–11 (1st Cir.1982) (upholding the district court's dismissal of a Title VII complaint which was filed ninety-one days after receiving a "right to sue" letter from the EEOC).

**IV.**

*Joseph's M.G.L. ch. 151B Claims are also Barred by the Statute of Limitations*

As described above, Joseph's complaint of discrimination was made more than 300 days after an actionable violation had occurred. Under M.G.L. ch. 151B, § 5, "[a]ny complaint filed pursuant to this section must be so filed within six months after the alleged act of discrimination."

---

5. Even if Joseph had shown that the audit was targeted at her, it could not be considered an "anchoring violation" in. this case because Joseph "has not demonstrated that the timely acts are linked to the untimely act by similarity, repetition or continuity." *Provencher*, 145 F.3d at 15. The audit cannot be viewed as an act which is similar, repetitious, or a continuation of Wentworth's failure to promote or its unfavorable 1995–1996 actions.

6. Count one asserts a discrimination claim under Title VII. Count six asserts a retaliation claim under § 704 of Title VII (codified at 42 U.S.C. § 2000e–3(a)). These claims are barred because they are subject to § 706 of Title VII's limitation period which, as described above, has run. *See* § 706 of Title VII (codified at 42 U.S.C. § 2000e–5(e)(1)).

Joseph's state law claims under M.G.L. ch. 151B do not meet this requirement. *See Pilgrim v. Trustees of Tufts Coll.,* 118 F.3d 864, 868 (1st Cir.1997) (holding that if a plaintiff's Title VII claim is not timely, her M.G.L. ch. 151B claim is not timely either). As a result, Wentworth is entitled to summary judgment on counts seven and eight of the complaint.[7]

## V.

### *Joseph's Title IX Claim Fails Because She has not Established Pretext*

To maintain a claim under Title IX, a plaintiff must establish that "on the basis of sex, ... she was subjected to discrimination under any education program or activity receiving Federal financial assistance." § 901(a) of Title IX (codified at 20 U.S.C. § 1681(a)).

■■■ Joseph argues that Wentworth discriminated against her on the basis of sex when it refused to grant her advanced placement credits towards her bachelor's degree.

Wentworth moves for summary judgment on this claim. Wentworth argues that Joseph has failed to produce any evidence that its legitimate motive for denying her advanced placement credits, her lack of professional experience, was pretextual.

Wentworth is entitled to summary judgment on Joseph's Title IX claim. Because Joseph's Title IX claim falls within the employment discrimination context, Title VII's burden shifting approach applies. *Cohen v. Brown Univ.,* 991 F.2d 888, 902 (1st Cir.1993) (holding that Title VII's burden-of-proof rules do not apply in Title IX cases *except* in the employment discrimination context). Under this burden shifting

approach, if a defendant offers a legitimate motive for the challenged practice, then the plaintiff must establish pretext. *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988) (applying Title VII's burden-of-proof rules in a Title IX employment discrimination case). Joseph has failed to offer any evidence that Wentworth's reason for denying her advanced placement credits was pretextual. As a result, count three is dismissed.

## VI.

### *Joseph's Breach of Contract Claim is Without Merit*

Wentworth argues that count nine, the breach of contract claim, should be dismissed because an at-will employee has limited "contract rights," none of which have been abridged.

Although Joseph does not specifically respond, she does allege that while "plaintiff was first employed by defendant under a contract at will ... the terms of [defendant's employee handbook] formed part of the plaintiff's contract of employment." *Compl.* ¶¶ 6–8. Presumably, Joseph's counter argument is that Wentworth's actions breached the provisions of the handbook which specified a non-discrimination policy.

■■■ Joseph's breach of contract claim is without merit. In *Pearson v. John Hancock Mut. Life Ins. Co.,* 979 F.2d 254 (1st Cir.1992), the Circuit Court held that a strikingly similar employee handbook could not be found to have altered an at-will employment relationship. *Pearson* is controlling. In fact, the only significant distinguishing factor between the handbook at issue in *Pearson* and the Wentworth handbook is that the latter expressly disclaims the formation of any contract

---

7. Count seven asserts a discrimination claim under M.G.L. ch. 151B(4). Count eight asserts a retaliation claim under M.G.L. ch. 151B(4)(4). Both claims are barred because they are subject to M.G.L. ch. 151B, § 5's limitation period which, as described above, has run. It is also worth noting that even if

these claims were not barred by the statute of limitation, as explained later in this opinion, those claims that were presented to the MCAD in 1995 would be barred by the doctrines of res judicata and collateral estoppel because the MCAD made a final determination of these claims.

rights on its front page. This distinction of course plays against Joseph, and makes it even clearer that Wentworth's employee handbook did not alter Joseph's status as an at-will employee.

■ It is true that an at-will employee in Massachusetts is given some "quasi-contract" protections. Massachusetts law protects at-will employees from termination in two circumstances: termination which is against public policy or would unjustly enrich employer. *Bergeson v. Franchi*, 783 F.Supp. 713, 717 (D.Mass. 1992). As described earlier, Joseph was not terminated by the company, let alone under these conditions. As a result, the breach of contract claim is dismissed.

## VII.

### Joseph's § 1981 Claims

Joseph's quiver contains a final arrow: 42 U.S.C. § 1981. In stating her § 1981 claims she repeats all of her allegations of employment discrimination contained in the complaint. In their present form, her claims under § 1981 fall well short of their mark. However, with respect to at least two[8] of her claims under § 1981, decision is deferred pending further discovery and subsequent briefing.

Section 1981 provides in pertinent part:

(a) All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens.

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

### A. At–Will Employees Can Sue Under § 1981

The First Circuit has not yet addressed the important question of whether an at-will employment relationship constitutes a contractual relationship under § 1981.[9]

Joseph relies on *Fadeyi v. Planned Parenthood Assoc.*, 160 F.3d 1048 (5th Cir. 1998) for the proposition that an at-will employment relationship constitutes a contractual relationship under § 1981.

Wentworth distinguishes *Fadeyi* by arguing that it was "based on Texas law which grants contractual rights to at-will employees." *D's Mem. Add, Court's Question* 5, n. 2. Wentworth contends that Texas law is distinguishable from Massachusetts law in this respect because "under Massachusetts law, at-will employees have no contract rights." *D's Mem. Add. Court's Question* 4.[10]

---

8. It is not clear from the complaint whether Joseph is bringing a § 1981 claim alleging that Wentworth discriminatorily refused to pay her overtime after December 1995. If Joseph is making this claim, then she should amend her complaint to state specifically the overtime violations alleged. Even if Joseph were to amend the complaint, Wentworth has raised serious objections to Joseph's attempt to bring an overtime claim under § 1981. Decision on these objections is deferred until the exact nature of Joseph's § 1981 overtime complaint (if any at all) has been clarified.

9. Joseph asserts that the First Circuit reached this issue in *Benjamin v. Aroostook Med. Ctr.*, 113 F.3d 1, 2 (1st Cir.1997) (per curiam). In *Benjamin*, the Circuit Court briefly commented that the plaintiff, a doctor with provisional staff privileges who was terminated by

a Maine hospital, could sue under § 1981. *Benjamin* is distinguishable and cannot be relied on as establishing the broad proposition that at-will employees can sue under § 1981. Under Maine law, staff physicians have certain rights which do not apply to ordinary at-will employees. *See e.g., Bartley v. Eastern Maine Med. Ctr.*, 617 A.2d 1020, 1021 (Me.1992) (the bylaws of a private medical center may constitute an enforceable contract between the medical center and its staff physicians); *Bhatnagar v. Mid–Maine Med. Ctr.*, 510 A.2d 233, 234 (Me.1986)(same).

10. Texas law is not as novel as Wentworth claims. As described by the court and even argued by Wentworth in discussing Joseph's breach of contract claim, at-will employees in Massachusetts do have certain "quasi-contract" rights. *See Bergeson*, 783 F.Supp. at

In an effort to prove that *Fadeyi* is an anomaly, Wentworth also cites four cases for the proposition that an at-will employment relationship *does not* constitute a contractual relationship under § 1981.

*Fadeyi* is no anomaly. Recently, the Second, Tenth, and Fourth Circuits, have joined *Fadeyi* in concluding that an at-will employee may sue under § 1981. *Lauture v. International Bus. Mach. Corp.*, 216 F.3d 258, 259 (2d Cir.2000); *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999), *cert. denied*, 529 U.S.——, 120 S.Ct. 1964, 146 L.Ed.2d 796 (2000); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018–19 (4th Cir.1999).

In addition, the cases misleadingly cited and relied on by Wentworth do not support its position. The three district court opinions cited by Wentworth on this issue have been overruled. The only Circuit Court opinion relied on by Wentworth, *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1034–35 (7th Cir.1998), merely suggested, without deciding, that at-will employee cannot sustain claim under § 1981.

 The four circuit court opinions squarely addressing this issue and concluding that an at-will employee may sue under § 1981 cover the field and make it unnecessary to analyze the issue further. I agree with their conclusion that at-will employees may sue under § 1981.

*B. Joseph's § 1981 Claims Accruing Prior to August 5, 1995, are Time–Barred*

Wentworth correctly argues that all of Joseph's § 1981 claims accruing prior to August 5, 1995, are time-barred by Massachusetts' three-year statute of limitations for personal injury claims.

 In *Johnson v. Rodriguez*, 943 F.2d 104, 107 (1st Cir.1991), the Circuit Court held that Massachusetts' three-year statute of limitations for personal injury claims is applicable to § 1981 claims. This limitation bars all of Joseph's § 1981 claims accruing prior to August 5, 1995.[11] Joseph challenges four specific "acts" by Wentworth occurring after August 5, 1995: its October, 1995, performance review of Joseph; its denial of Joseph's application for a promotion; its "audit of Joseph"; and its "constructive discharge" of her. In addition, Joseph also makes a general hostile work environment claim.

*C. Analysis of Joseph's Remaining § 1981 Claims Under McDonnell Douglas*

"When a plaintiff seeking to establish a claim pursuant to section 1981 offers indirect proof of purposeful discrimination, the McDonnell Douglas formulation applies." *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 111 (1st Cir.1988). As described earlier in this opinion, Joseph's claims relating to Wentworth's audit of cash and receipts in her department and her "constructive discharge" cannot be sustained under test announced in *McDonnell Douglas*. Accordingly, Wentworth is entitled to summary judgment on these § 1981 claims.

Wentworth's motion for summary judgment is also granted as to Joseph's § 1981 claim based on her October, 1995, performance evaluation. Wentworth argues that Joseph is barred by the doctrines of collateral estoppel and res judicata from bringing this claim. Wentworth points out that in 1995, Joseph litigated this, and many of her other claims, in the MCAD. The MCAD issued a lack of probable cause finding which Joseph did not appeal. Wentworth contends that the decision of

---

717 (termination of an at-will employee which is against public policy or would unjustly enrich employer is a breach of contract). While these "quasi-contract" rights are not identical to those available under Texas law, they are notably similar.

11. It is also worth noting that even if these claims were not barred by the statute of limitations, as explained later in this opinion, they would all be barred by the doctrines of res judicata and collateral estoppel because the MCAD made a final determination of these claims.

the MCAD constituted a final judicial determination for collateral estoppel and res judicata purposes. Joseph does not respond to this argument.

 Under Massachusetts law, a Final Commission Order of the MCAD is given preclusive effect to bar a plaintiff from bringing a new court action. Brunson v. Wall, 405 Mass. 446, 541 N.E.2d 338, 338–342 (1989). "Where no party files a timely appeal to the Full Commission of a final decision of a Hearing Commissioner, that decision shall constitute the Final Order of the Commission for the purposes of judicial enforcement." 804 C.M.R. § 1.25(1). Here, when Joseph failed to file a timely appeal, the hearing officer's decision became a Final Commission Order of the MCAD which would preclude further court action on these claims.[12] Wentworth's motion for summary judgment is therefore granted as to Joseph's § 1981 claim based on the October 1995, performance evaluation.

 Joseph's claim that Wentworth failed to promote her to the position of Assistant Director–Student Activities because of her race presents a more thorny issue. Wentworth argues that Joseph does not meet her burden under the McDonnell Douglas framework because it has articulated a legitimate reason for denying Joseph the promotion that has not been refuted. Wentworth's reason is that Joseph did not have a bachelor's degree, which was a prerequisite for the job.

Joseph responds that a bachelor's degree was unnecessary for the position. In the alternative, Joseph argues that the promotion of Nadia Souri demonstrates that this requirement is pretextual. Souri is a white female who received a promotion to a different supervisory position, which Joseph was seeking, three weeks before she received her bachelor's degree. Souri received this promotion even though the job required a bachelor's degree. Finally, Joseph argues in her Fed.R.Civ.P. 56(f) motion that the court should defer judgement on this (and all other issues) until it has ruled on her motion to compel.

As Joseph's claim is currently presented, it does not withstand scrutiny under McDonnell Douglas. Joseph has scant evidence that she was qualified for the Assistant Director position and absolutely no evidence that Wentworth's reason for denying her the position was a pretext.[13]

 Nevertheless, Joseph may have been hampered in making her claim [14] by Wentworth's refusal to turn over discoverable information. Joseph's motion to compel has not been ruled on. Joseph's interrogatories thirteen and fourteen and document request "O" ask for information relating to this claim. Wentworth objected to these requests (and many of Joseph's other requests) on the basis that any potential claims that Joseph may have had were barred. Although Wentworth's position in its opposition to Joseph's motion to compel has proven to be correct on almost all fronts, here, it is mistaken. Joseph's § 1981 claim regarding Wentworth's failure to promote her to the Assistant Director position in 1996 is not barred. As a result, Joseph's Rule 56(f)

12. As the Supreme Judicial Court stated in Brunson, 541 N.E.2d at 341 (citations omitted), "[t]he fact that, in her complaint in ... Court," the plaintiff advanced different theories of liability (Reconstruction era civil rights statutes) from what she presented to the MCAD does not aid her case. Simply pursuing a different form of liability cannot prevent collateral estoppel's bar to relitigation if the new theories "grow[ ] out of the same transaction, act, or agreement and seek[ ] redress for the same wrong."

13. The fact that Wentworth hired Souri for a different position three weeks prior to her obtaining a bachelor's degree is not evidence that the degree requirement was a pretext.

14. At various times Joseph has characterized her objection to the bachelor's degree requirement as based in its disparate impact on African–Americans. It is worth noting that a plaintiff may not make a disparate impact claim under § 1981. General Bldg. Contractors Assoc., Inc. v. Pennsylvania, 458 U.S. 375, 389, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

motion and motion to compel are granted to the extent that they relate to this claim.

Joseph's final claim under § 1981 is a hostile work environment claim. "Hostile work environment claims may ... be pursued by employees under ... section 1981." *Danco, Inc. v. Wal–Mart Stores, Inc.*, 178 F.3d 8, 13 (1st Cir.1999).

As a threshold matter, Joseph cannot rely on events prior to August 5, 1995, or previously considered in her December 1995, MCAD charge as a basis for her claims. These events are barred by res judicata and collateral estoppel principles.

As the Circuit Court explained in *Danco:*

> To make out a hostile work environment claim, the plaintiff must show not only a contractual relationship but also two further elements: (1) that the plaintiff was exposed to comments, jokes, or acts of a racial nature by the defendant's employees; and (2) that the conduct had the purpose or effect of interfering with the plaintiff's work performance or created an intimidating, hostile or offensive working environment ... While a plaintiff must show more than a few isolated incidents of racial enmity, there is no "absolute numerical standard by which to determine whether harassment has created a hostile environment."

*Danco*, 178 F.3d at 16 (citations omitted).

 Joseph contends that several racially harassing events interfered with her work environment which were not included in her December, 1995, MCAD charge. After she filed her MCAD charge, she asserts that her boss "nit picked" and severely scrutinized her work. In addition, Joseph contends that when she complained to her boss' superiors about this behavior in the Spring of 1996, they acted in a racially harassing manner. Joseph asserts at a meeting discussing her charges, one of her boss' superior's pounded on the table, said that he was "angry with her," and then shortly after the meeting, threatened her in writing with termination.

Wentworth responds that these harassment claims are legally insufficient to state a hostile work environment claim. Wentworth also argues that it is entitled to the "reasonable care" affirmative defense announced in *Burlington Indus. v. Ellerth*, 524 U.S. 742, 744, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 806, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Joseph's Fed.R.Civ.P. 56(f) motion is granted regarding this claim. The state of the record makes it difficult to determine whether the incidents alleged by Joseph to be harassing are legally sufficient to state a hostile workplace claim. Rather than try to mull through this issue which has been put in the background of the parties briefs and record submissions, the court defers decision until a clearer record presents itself.

The reasonable care affirmative defense announced in *Ellerth* and *Faragher* does not, at this time, settle the issue. As Wentworth itself correctly points out in its summary judgment memorandum, the reasonable care defense is "available only if the alleged discrimination did not result in a tangible employment action." *D's S.J. Mem.* 16, n. 30. (quoting *Ellerth*, 524 U.S. at 744, 118 S.Ct. 2257). Remaining at this time in the case is Joseph's 1996 promotion claim. If Joseph can prove that the conduct she complained about in 1995 resulted in Wentworth's decision not to promote her, then the reasonable care defense will be unavailable to Wentworth.

An additional reason for deferring decision on Wentworth reasonable care defense is the status of discovery. Joseph's motion to compel has not been ruled on. Part of this motion requests answers to interrogatory sixteen and document request "R" which deal with Wentworth's reasonable care defense. Up to this point, these requests have been evasively answered. Joseph is entitled to the discov-

ery requested in document request "R" and interrogatory sixteen.

## VIII.

In sum, Wentworth's motion for summary judgment is granted in part and deferred on Joseph's two remaining § 1981 claims under counts four and five.[15] These two claims relate to Wentworth decision not to promote Joseph in July of 1996 and Joseph's workplace environment in late 1995 through 1996. Joseph's Fed.R.Civ.P. 56(f) motion is granted to the extent it requests an answer to: (1) interrogatory sixteen and document request "R;" (2) interrogatory thirteen and fourteen and document request "O" insomuch as it relates to her 1996 promotion claim; and is denied in all other respects. Joseph's motion to strike is denied. Decision on Wentworth's motion to strike is contained in a separate Order.

A conference shall be promptly scheduled at which a plan for completing discovery and briefing the remaining issues will be set.

It is so ordered.

---

**15.** Count four asserts a claim under 42 U.S.C. § 1981. Count five asserts a claim under the Civil Rights Act of 1991. This Act expanded the scope of protections offered by § 1981. It is not, nor has it been treated by the parties, as a separate cause of action in this case.