**Alpha LOUCAR, Plaintiff,**

v.

**BOSTON MARKET CORPORATION, Defendant.**

**No. 03 CIV.0066 WHP.**

United States District Court, S.D. New York.

Dec. 3, 2003.

Malick A. Diop, Esq., New York, NY, for Plaintiff.

Joel L. Finger, Esq., Brown Raysman Millstein Felder & Steiner LLP, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

Plaintiff Alpha Loucar brings this employment discrimination action against defendant Boston Market Corporation ("Boston Market"), alleging that it discriminated against him on the basis of his race and national origin, and retaliated against him, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"). Currently before this Court is Boston Market's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion for summary judgment is granted.

## BACKGROUND

Plaintiff, who immigrated to the United States from Senegal in 1995, began working as a "chicken cutter" at Boston Market's Yonkers, New York restaurant in December 1995. (Deposition of Alpha Loucar ("Pl. Dep.") at 13, 20–21.) He was promoted to Hourly Shift Supervisor in May 1997, and Assistant Manager later that year. (Pl. Dep. at 27–29; Declaration of I. Michael Kessel, dated October 16, 2003 ("Kessel Decl.") Ex. C.) In 2001, the Yonkers restaurant had the highest customer volume, as measured by revenue, of any Boston Market restaurant in the country. (Affidavit of William Caraher, dated September 30, 2003 ("Caraher Aff.") ¶ 2.)

As Assistant Manager, plaintiff received written performance reviews from John Brooks, the General Manager of the Yonkers restaurant. (Affidavit of John Brooks, dated October 2, 2003 ("Brooks Aff.") ¶ 3; Pl. Dep. at 280–81.) In plaintiff's August 1999 written review, Brooks noted that plaintiff was "capable," but that he "ha[d] to be a little more independent [and][n]eed[ed] to become more of a leader—do without being told." (Brooks Aff. ¶ 3, Ex. A at 3.) In plaintiff's November 2000 review, Brooks wrote that plaintiff was "very capable of being [a General Manager]," but "need[ed] to be more proactive about his own development" and "finish modules to be [a] GM." (Brooks Aff. ¶ 4, Ex. B at 2, 3.) Plaintiff's 2001 review was substantially similar to his 1999 and 2000 reviews, noting that he needed to think "long term," and needed to be more "proactive" as plaintiff did "not take on *his* responsibility ... to make sure everyone does the[irs]." (Brooks Aff. ¶ 5, Ex. C at 3 (emphasis in original).)

In March 2001, Brooks was transferred out of the Yonkers restaurant, and replaced by Kirk Forest, an African–American. (Caraher Aff. ¶ 3.) In June 2001,

William Caraher was promoted to Area Manager for the Westchester area in which the Yonkers restaurant was located. (Caraher Aff. ¶ 3.)

Forest served as the General Manager of the Yonkers restaurant until July 1, 2001. (Caraher Aff. ¶ 3.) Defendant maintains that, upon Forest's departure, Caraher named plaintiff "acting" or "temporary" General Manager of the Yonkers restaurant. (Compl. ¶ 7; Affidavit of Abbe Lonker, dated October 14, 2003 ("Lonker Aff.") Ex. A; Kessel Decl. Ex. E; Pl. Dep. at 656–57.) In contrast, plaintiff contends that Caraher promoted him to General Manager of the Yonkers restaurant at that time. (Pl. 56.1 Stmt. ¶ 16; Pl. Opp. at 9, Exs. A–E.)

In order to be promoted to General Manager, a Boston Market Assistant Manager was required to show that he could meet defendant's written performance criteria, the "Fourteen Steps to Becoming a General Manager" (the "Fourteen Steps"). (Caraher Aff. ¶ 7, Ex. C.) Further, it was Boston Market's practice that only experienced General Managers were placed in high volume restaurants, and newly-promoted General Managers were first placed in lower volume restaurants in order for them to develop General Manager skills. (Affidavit of William Sambuca, dated October 6, 2003 ("Sambuca Aff.") ¶ 3.) During the time that plaintiff was performing General Manager duties at the Yonkers restaurant, Caraher observed that plaintiff met only five of the "Fourteen Steps." (Caraher Aff. ¶ 8.)

While plaintiff was acting in the capacity of General Manager, William Sambuca, defendant's Vice President of Operations for the New York and New Jersey region, searched for a new General Manager for the Yonkers restaurant. (Sambuca Aff. ¶ 4.) Sambuca eventually chose Rigoberto Diaz, a Hispanic man, to be the General Manager of the Yonkers restaurant. Diaz started in Yonkers on August 13, 2001. (Pl. Dep. at 694; Affidavit of Rigoberto Diaz, dated October 7, 2003 ("Diaz Aff.") ¶ 2.) Prior to becoming General Manager of the Yonkers restaurant, Diaz was the General Manager of defendant's Hoboken, New Jersey restaurant, and had over five years of experience as a General Manager with defendant. (Sambuca Aff. ¶ 4; Diaz Aff. ¶ 2.)

On August 17, 2001, plaintiff wrote a letter to Sambuca claiming that he was capable of being the permanent General Manager of the Yonkers restaurant, and stating that he believed that he was not selected because he is black. (Lonker Aff. ¶ 2, Ex. A.) After receipt of plaintiff's letter, Sambuca and Abbe Lonker, a Human Resources Manager with Boston Market, met with plaintiff on August 29, 2001. (Sambuca Aff. ¶ 5; Pl. Dep. at 698.) Following that meeting, Sambuca directed Caraher to draft a development plan for plaintiff which listed "areas of development needed for [plaintiff] to be GM ready," referencing the Fourteen Steps program. (Sambuca Aff. ¶ 5, Ex. A; Caraher Aff. ¶ 10, Ex. D.) Caraher drafted such a plan, and reviewed it with plaintiff and Diaz at a meeting on September 18, 2001. (Caraher Aff. ¶ 11, Ex. E.)

At that September 18 meeting, Caraher also communicated to plaintiff certain official reprimands, called "counseling notices," relating to events that occurred in the week prior to the meeting. (Caraher Aff. ¶¶ 12–17; Diaz Aff. ¶¶ 4–5.) The incidents about which plaintiff was counseled included running out of chicken during plaintiff's shift, showing up late to work, leaving his shift early, and signing off on a delivery of chicken that was 45 cases short. (See Def. Mem. at 6–7.) While plaintiff was counseled concerning these events, the counseling notices did not result in any suspension, demotion, or reduction in pay. (Caraher Aff. ¶ 17.)

Soon after the September 18, 2001 meeting, plaintiff was transferred to the East Tremont, New York restaurant by Lonker in consultation with Caraher. (Lonker Aff. ¶ 5.) Lonker felt that it would be better for plaintiff's development to work in a lower-volume restaurant. (Lonker Aff. ¶ 5.) In addition, plaintiff's relationship with Caraher had deteriorated precipitously after the September 18, 2001 meeting, and the transfer put plaintiff under the supervision of another area manager, Kym Kopping. (Pl. Dep. at 709–10; Lonker Aff. ¶ 5.) The transfer resulted in an increase in plaintiff's commute time of 10 minutes, but plaintiff's pay, title, and responsibilities remained the same. (Pl. Dep. at 338, 658–61.) In fact, plaintiff earned an extra bonus, as a result of the East Tremont restaurant exceeding its sales goals, which he would not have received had he still been employed in the Yonkers restaurant. (Lonker Aff. ¶ 7; Pl. Dep. at 339–40.)

David Austin was the General Manager of the East Tremont restaurant at the time plaintiff arrived there, and plaintiff enjoyed working with him. (Kessel Decl. Ex. F; Pl. Dep. at 348.) Austin resigned in December 2001, and at that time did not believe that plaintiff was ready to be named General Manager. (Affidavit of David Austin, dated September 19, 2002 ("Austin Aff.") ¶¶ 5–6.) On December 15, 2001, Kopping informed plaintiff that "a man named 'Gio'" was going to replace Austin as General Manager of the East Tremont restaurant. (Pl. Dep. at 359.) At the end of his shift on December 15, plaintiff left Kopping a voicemail telling her that he quit. (Pl. Dep. at 360–61, 728.)

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of establishing the absence of any "genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Any ambiguities must be resolved in favor of the non-movant, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and "all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505. If the moving party meets its initial burden, the non-movant must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-movant must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations omitted) (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994)). However, "[s]ummary judgment is appropriate even in discrimination cases," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), where a plaintiff's argument is "based on conclusory allegations of discrimination and the employer provides a legitimate rationale for its conduct." *Tojzan v. N.Y. Presbyterian Hosp.*, No. 00

Civ. 6105(WHP), 2003 WL 1738993, at *4 (S.D.N.Y. March 31, 2003).

## II.  *Plaintiff's Local Rule 56.1 Statement*

■ Plaintiff has, with few exceptions, failed to comply with the requirements of Local Civil Rule 56.1. Under Local Rule 56.1, a party opposing summary judgment must file a separate statement of material facts "as to which it is contended that there exists a genuine issue of material fact," and that controverts all material facts set forth in the moving party's Rule 56.1 Statement. Local Civil Rule 56.1(b)-(c). Any material fact in a movant's Rule 56.1 Statement not controverted by the opposing party is deemed admitted. Local Civil Rule 56.1(c). However, parties are not permitted to controvert a moving party's material facts with conclusory or unsupported statements, as "each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible ...." Local Civil Rule 56.1(e); *cf. Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir.2003) (even though plaintiff's Rule 56.1 counterstatement failed to specifically controvert certain of defendant's assertions, those assertions were unsupported and therefore must be "disregarded and the record independently reviewed") (citing *Holtz v. Rock-efeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir.2001)).

Here, plaintiff offers nothing but unsupported, conclusory statements and denials to refute defendant's properly-supported statements of material fact in its Rule 56.1 Statement. In addition, this Court's independent review of the record in this case supports defendant's unopposed assertions. Accordingly, with the exception of whether plaintiff was promoted to temporary or full-time General Manager of the Yonkers restaurant when Forest left,[1] defendant's facts as set forth in its Rule 56.1 Statement are deemed admitted. *See Spina v. Our Lady of Mercy Medical Ctr.*, No. 97 Civ. 4661(RCC), 2003 WL 22434143, at *2 (S.D.N.Y. Oct.23, 2003) (district court considered only defendant's facts where plaintiff failed to comply with Local Rule 56.1, noting that compliance with the Rule is especially important "where, as here, plaintiff brings a sexual harassment suit as such claims are often fact specific"); *accord Omnipoint Comm., Inc. v. White Plains*, 175 F.Supp.2d 697, 700 (S.D.N.Y. 2001).

## III.  *Racial Discrimination Claim*

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer ... to discriminate

---

1. Even with respect this question, it is likely that plaintiff has failed to raise a genuine issue of material fact. To refute defendant's claim that he was only the "acting" General Manager, plaintiff offers a Boston Market "Back Office Review" form bearing Loucar's name in the space labeled "GM NAME" (Pl. Opp.Ex. E), as well as three affidavits from former employees and customers claiming that Loucar was held out to be the "General Manager" (Pl.Opp.Exs. A–D). However, these documents are not inconsistent with plaintiff serving as "acting" General Manager, and, more importantly, are contradicted by plaintiff's own sworn testimony and the complaint itself. (Compl. ¶¶ 7–8; Pl. Dep. 118, 656–57.) *See Trans–Orient Marine v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991) ("a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony"); *accord Douglas v. Weil, Gotshal & Manges*, No. 92 Civ. 7638(JSM), 1993 WL 364572, at *3 (S.D.N.Y. Sept.14, 1993) (plaintiff's contention that he resigned "flies in the face of his contemporaneous statement in a memorandum, his sworn assertion before the EEOC, and his complaint in this action, in all of which documents he states that his employment was terminated by defendant"). However, the question of whether plaintiff was promoted to full-time or temporary General Manager of the Yonkers restaurant is ultimately not material, *see infra* Section III, and therefore this Court need not reach the issue.

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff's Title VII claim is governed by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817. Once the plaintiff has established a *prima facie* case, the defendant bears the burden of articulating a legitimate non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817. If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the reason offered by the employer is mere pretext, and that discrimination was the true motivating factor. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. 1817.

██ In order to prove a *prima facie* case of racial discrimination, a plaintiff has the burden of showing that: (1) he is a member of a protected class; (2) he is qualified for and satisfactorily performing his job; (3) he suffered an adverse employment decision; and (4) the circumstances of the adverse decision raise an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Jetter v. Knothe Corp.*, 324 F.3d 73, 75 (2d Cir.2003) (per curiam); *Windham v. Time Warner, Inc.*, 275 F.3d 179, 187 (2d Cir.2001). Although this burden is "minimal," *Bickerstaff v. Vassar College*, 196 F.3d 435, 445 (2d Cir.1999), plaintiff is unable to establish a *prima facie* case of discriminatory discharge because he fails to prove that his alleged demotion and transfer raise an inference of discrimination.

██ A plaintiff may make a *prima facie* case for an inference of discrimination "by showing that a similarly situated individual not in [plaintiff's] protected group ... was treated differently." *Tramble v. Columbia Univ.*, No. 97 Civ. 1271(RWS), 1999 WL 61826, at *5 (S.D.N.Y. Feb.10, 1999). In order to be considered " 'similarly situated,' the individual to whom [a plaintiff] attempts to compare [himself] must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997). In this case, the person to whom plaintiff compares himself, Diaz, was not similarly situated.

It is Boston Market's policy to place only experienced General Managers in high volume restaurants. (Sambuca Aff. ¶ 4.) The Yonkers restaurant was the highest volume Boston Market restaurant in the country. (Caraher Aff. ¶ 2.) At the time he was promoted to General Manager of the Yonkers restaurant, Diaz had over five years of experience as a General Manager, and a strong track record of performance in the areas of financial results, operations management, and personnel development. (Sambuca Aff. ¶ 4.) Even if plaintiff's assertions concerning his promotion to General Manager are credited, *see supra* Section II n. 1, plaintiff was only a General Manager for six weeks. (Pl. Opp. at 3–4.) Further, plaintiff does not dispute that he failed to meet the Fourteen Steps, defendant's written promotion policy, arguing only that "there is no such prerequisite at Boston Market." [2] (*Com-*

2. Plaintiff's conclusory allegation that Diaz's objective qualifications were "just a pretext" because plaintiff was the "natural" General Manager of the Yonkers restaurant (Pl. 56.1 Stmt. ¶¶ 21–23, 25–26; Pl. Opp. at 5–6) is unavailing. *See Crawford–Mulley v. Corning, Inc.*, 194 F.Supp.2d 212, 221–22 (W.D.N.Y. 2002) ("plaintiff's personal opinion of her performance neither creates an inference of

pare Def. 56.1 Stmt. ¶¶ 21–23 *with* Pl. 56.1 Stmt. ¶¶ 21–23.) Therefore, plaintiff and Diaz were not similarly situated at the time of Diaz's installation by Sambuca as the General Manager of the Yonkers restaurant. *See Bandhan v. Lab. Corp. of Am.*, 234 F.Supp.2d 313, 317–18 (S.D.N.Y. 2002) (plaintiff failed to establish *prima facie* case of discrimination where employee to whom she compared herself had six more years of experience); *accord Shumway*, 118 F.3d at 64; *Ralkin v. New York City Transit Auth.*, 62 F.Supp.2d 989, 999 (S.D.N.Y.1999).

■ Further, plaintiff's allegation that Caraher told him that the decision to hire Diaz as General Manager of the Yonkers restaurant was about "politics and race" is irrelevant, as it was Sambuca, and not Caraher, who decided to hire Diaz as General Manager in the Yonkers restaurant. *See Khan v. Abercrombie & Fitch, Inc.*, No. 01 Civ. 6163(WHP), 2003 WL 22149527, at *7 (S.D.N.Y. Sept.17, 2003) ("[Employee] played no role in [defendant's] decision to terminate [plaintiff] . . . and therefore his statements, even if uttered, do not raise an inference of discrimination"); *Boyle v. McCann–Erickson, Inc.*, 949 F.Supp. 1095, 1102 (S.D.N.Y.1997) (statements by non-involved supervisors cannot be the basis of a discrimination

claim); *cf. Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir.2001) ("the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination").

■ As plaintiff is unable to raise an inference of discrimination, he cannot establish a *prima facie* case of racial discrimination under a *McDonnell Douglas* inquiry.[3] Accordingly, defendant's motion for summary judgment on plaintiff's race and national origin discrimination claim is granted.

## IV. *Retaliation*

In addition to his discrimination claim, plaintiff also claims that defendant impermissibly retaliated against him for sending the August 17, 2001 letter to Sambuca complaining of racial discrimination. Plaintiff alleges that the retaliation took the form of: (1) the counseling notices he received at the September 18, 2001 meeting with Caraher and Diaz; and (2) his transfer to the East Tremont restaurant on September 20, 2001.

Title VII provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [such employee] has opposed any practice made an unlaw-

discrimination nor constitutes evidence of pretext").

**3.** Even assuming *arguendo* that plaintiff was able to establish a *prima facie* case of discrimination, defendant has met its burden under the *McDonnell Douglas* framework by proffering multiple legitimate, non-discriminatory reasons for plaintiff's alleged demotion. *See* 411 U.S. at 802, 93 S.Ct. 1817. Defendant has demonstrated that Diaz was amply qualified for the General Manager position at the Yonkers restaurant according to defendant's objective promotion criteria (Sambuca Aff. ¶ 4; Caraher Aff. ¶ 2), and that plaintiff, in contrast, was not similarly qualified (Def. 56.1 Stmt. ¶¶ 21–23). The burden would then shift

back to plaintiff under the *McDonnell Douglas* framework to demonstrate that defendant's proffered reasons are mere pretext for discrimination, and that its conduct was motivated by a discriminatory purpose. 411 U.S. at 802–04, 93 S.Ct. 1817. Plaintiff would be unable to meet this burden, as he offers no evidence of defendant's actual intent, and the disparity in qualifications between plaintiff and Diaz bolsters defendant's contention that Diaz's promotion was not based on pretext. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256–257, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (plaintiff must show that a discriminatory reason actually motivated the employer, or that employer's proffered reason lacks credibility).

ful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). Claims of unlawful retaliation under Title VII are subject to the same *McDonnell Douglas* burden shifting analysis. *See Jetter,* 324 F.3d at 75. In the first instance, a plaintiff must establish a *prima facie* case of retaliation by showing that: (1) he participated in a protected activity; (2) defendant knew of his participation in the protected activity; (3) he was subjected to an adverse employment action; and (4) there is a causal connection between the protected activity and the employment action. *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir.1996).

Plaintiff's claim of retaliation fails because he has not suffered an "adverse" action as that term is defined in the relevant caselaw. In the Second Circuit, a plaintiff suffers an "adverse" action if he "endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Ed.,* 202 F.3d 636, 640 (2d Cir.2000). First, the counseling notices given to plaintiff on September 18, 2001, did not effect a materially adverse change in the terms and conditions of his employment. (Caraher Aff. ¶ 17.) In fact, no negative repercussions flowed from the counseling notices. *See Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 248 (S.D.N.Y.2001) ("Courts in this district have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions."), *aff'd in part, appeal dismissed in part,* 51 Fed. Appx. 55 (2d Cir.2002); *Stembridge v. City of New York,* 88 F.Supp.2d 276, 283 (S.D.N.Y.2000) (reprimand that contained a warning of potential future disciplinary action did not constitute adverse action).

Second, plaintiff's transfer to the East Tremont restaurant was not an adverse action because a transfer is not an adverse employment action unless it results "in a change in responsibilities so significant as to constitute a setback to the plaintiff's career." *Galabya,* 202 F.3d at 641. In contrast, plaintiff's transfer did not result in any loss of pay, benefits, title, or opportunities for advancement.[4] (Pl. Dep. at 658–661.) *See Galabya,* 202 F.3d at 640 (adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities"). Since plaintiff did not suffer an "adverse action" as a result of his August 17, 2001 letter to Sambuca, defendant's motion for summary judgment on plaintiff's retaliation claim is granted.

## V. *Constructive Discharge / Hostile Work Environment*

Plaintiff also claims that, as a result of a hostile work environment in the East Tremont restaurant, he was forced to resign from Boston Market on December 15, 2001. While the complaint is unclear with respect to this claim, this Court treats this claim as one for hostile work environment and constructive discharge. To prevail on a hostile work environment claim, the conduct must be " 'sufficiently severe or pervasive to alter conditions of the victim's employment and create an abusive working environment'." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). "Conduct that is 'merely offensive' and 'not severe or pervasive enough to

---

4. Plaintiff's allegation of a 10–minute increase in commuting time is not a materially adverse

change in the terms and conditions of his employment.

create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview.'" *Torres v. Pisano,* 116 F.3d 625, 630–31 (2d Cir.1997) (quoting *Harris,* 510 U.S. at 21, 114 S.Ct. 367). Therefore, "[t]he incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992). Similarly, to maintain a claim of constructive discharge, a plaintiff must show that the defendant intentionally and deliberately created an intolerable work atmosphere that was so difficult or unpleasant that a reasonable person in plaintiff's situation would have felt compelled to resign. *Mack v. Otis Elevator Co.,* 326 F.3d 116, 128 (2d Cir.2003); *Bennett,* 136 F.Supp.2d at 251.

■ Plaintiff does not credibly contend that there was an unpleasant, intolerable, abusive or hostile work environment at the East Tremont restaurant. In fact, plaintiff admits that he enjoyed working for Austin and Kopping. (Pl. Dep. at 343, 348, 350, 509.) Further, plaintiff resigned from Boston Market the day he learned that "Gio" had been promoted to the newly-vacant General Manager position in the East Tremont restaurant. (Loucar Dep. at 355, 359–61.) This, in combination with plaintiff's failure to allege any abusive or difficult working circumstances in the East Tremont restaurant, bolsters the conclusion that plaintiff resigned as a result of being denied promotion to General Manager in the East Tremont restaurant. A denial of promotion does not constitute an "intolerable work atmosphere" amounting to a constructive discharge. *Alleyne v. Four Seasons Hotel,* No. 99 Civ. 3432(JGK), 2001 WL 135770, at *13–14 (S.D.N.Y. Feb.15, 2001), *aff'd* 25 Fed.Appx. 74 (2d Cir.2002); *accord Stembridge,* 88 F.Supp.2d at 284 (denial of promotion, reprimands and poor performance evaluations insufficient to support a claim of constructive discharge).

Finally, plaintiff does not allege, and there is no evidence in the record to suggest, that the promotion of "Gio," and not plaintiff, to the General Manager position in the East Tremont restaurant was done with the intention of causing plaintiff to resign. *Alleyne,* 2001 WL 135770, at *14 ("Although the plaintiff may have been disappointed with the rate at which she was being promoted, no rational jury could conclude that [defendant] deliberately created working conditions that would cause a reasonable person to feel compelled to resign."). Accordingly, defendant's motion for summary judgment on plaintiff's hostile work environment and constructive discharge claim is granted.

## VI. *Section 1981*

■ In October 2001, plaintiff filed a verified complaint with the New York State Division on Human Rights ("NYSDHR"), alleging discrimination and retaliation claims arising from the same facts and circumstances alleged in the complaint. (Kessel Decl. Ex. E.) The NYSDHR found "no probable cause" and dismissed plaintiff's complaint. (Kessel Decl. Ex. E.) A finding by the NYSDHR of "no probable cause" has a *res judicata* effect, and precludes a subsequent claim on the same facts by a plaintiff pursuant to 42 U.S.C. § 1981. *DeCintio v. West. Co. Med. Ctr.,* 821 F.2d 111, 117–18 and n. 13 (2d Cir.1987); *accord Alvarado v. Manhattan Worker Career Ctr.,* No. 01 Civ. 9288(CBM), 2002 WL 31760208, at *11–12 (S.D.N.Y. Dec.10, 2002) (dismissing § 1981 claim based on NYSDHR finding of no probable cause on same allegations of discrimination and retaliation). Accordingly, defendant's motion for summary judgment on plaintiff's Section 1981 claim is granted.

## CONCLUSION

For the foregoing reasons, defendant Boston Market Corporation's motion for summary judgment against plaintiff Alpha Loucar is granted. The Clerk of Court is directed to mark this case closed.

SO ORDERED.